IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Jeremy R. Phillips, # 325588, | ) | |
| | ) | Civil Action No. 6:15-2458-HMH-KFM |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Warden Bernard McKie, | ) | |
| | ) | |
| Respondent. | ) | |

The petitioner, a state prisoner, represented by counsel, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

### BACKGROUND

The petitioner is currently incarcerated at Kirkland Correctional Institution in the South Carolina Department of Corrections (doc. 1 at 1). He was indicted by the Cherokee County Grand Jury in March 2007 for murder (2007-GS-11-301) and first degree arson (2007-GS-11-302) (app. 789-90, 792-93[1]). At trial, the petitioner was represented by Wade S. Weatherford, III (app. 3). The State was represented by Assistant Solicitor Michael D. Morin of the Seventh Judicial Circuit Solicitor's Office (*id.*). On December 5–7, 2007, the petitioner was tried by a jury before the Honorable J. Derham Cole, Circuit Court Judge, on both charges (app. 3–602). On December 7, 2007, the petitioner was convicted

---

[1]The appendix can be found at Docket Entry Numbers 28-1 through 28-11.

(app. 597–98).  Judge Cole sentenced the petitioner to life in prison for the murder conviction and thirty years imprisonment for the arson conviction (app. 601–02).

### Underlying Case Facts

On the night of August 30, 2006, the petitioner and Jesse Willis, the petitioner's co-defendant, assaulted the victim, Juan Roman, in his trailer.  Shortly thereafter, they set fire to the victim and the trailer.  The victim died from thermal burns he sustained during the fire (app. 141, 144–45).  The pathologist testified at trial that two of the victim's front teeth had been knocked out and he had suffered a subarachnoid hemorrhage in his brain shortly before his death (app. 142–43).  The victim was alive during the fire (app. 148).

Jesse Willis' mother Hazel testified that on the day of the fire, she and her boyfriend Alberto Rodriguez[2] were in her trailer along with her son Jesse, the petitioner, and the victim. (app. 242–43).  She stated that some point in the evening the victim left to get more beer (app. 249, 255–56).  Shortly after he left, the petitioner and Willis also left (app. 249, 257).  Willis returned later that evening covered in blood carrying a pair of the victim's boots (app. 250; *see* app. 200–01).  Hazel stated that Willis told her that he and the petitioner had beaten up the victim (app. 258).  Nakia Gossett, the petitioner's girlfriend, took Willis away from the trailer (app. 259).  Later, the petitioner entered Hazel's trailer and was also covered in blood (app. 201, 261–62).  She testified that the petitioner indicated he stopped by to make sure that she was okay because the victim had threatened her in the past (app. 262, 264).  The petitioner threatened to kill Hazel if she reported what she had seen.  The petitioner then left the trailer (app. 264, 265).  Hazel testified that later that evening, the petitioner tapped on her bedroom window and told her to turn out her bedroom

---

[2]Throughout the record, this name is spelled as Rodrigues and Rodriguez.  The undersigned will refer to him as Rodriguez for clarity.

lights (app. 266, 267). She also stated that she saw the petitioner throw something into the victim's kitchen and that the victim's trailer caught on fire (app. 270–72).

Gossett also testified at trial. She stated that she and the petitioner were going back and forth between the victim's trailer and Hazel's trailer (app. 307). At some point during the evening, Willis and the petitioner were sent to the victim's trailer to get beer for Rodriguez (app. 308, 337). Gossett was with Hazel and Rodriguez at the time; after waiting approximately 20 to 30 minutes, Gossett walked down to the victim's trailer (app. 308–09). She saw the petitioner on one side of the trailer and Willis on the other (app. 310). The victim was on the floor in the kitchen, and blood was everywhere (*id.*). She stated that she saw them beating and kicking the victim (app. 337, 338). She went back and told Hazel that she thought the two men had beaten the victim to death (app. 310, 339). Gossett testified that the petitioner did not enter Hazel's trailer while she and Willis were there; however, he was outside, and he was covered in blood (app. 310, 340). The petitioner instructed Gossett to take Willis over to the petitioner's trailer and get Willis cleaned up (app. 310). Then, she and Willis gave the petitioner Willis's bloody clothes to burn (app. 313). Gossett testified that after Willis cleaned up, he and the petitioner discussed moving the body (app. 314). They eventually decided they would burn down the victim's trailer (app. 314, 358). She stayed in the petitioner's trailer, as Willis followed the petitioner. She then saw the fire after ten or fifteen minutes (app. 314–15). The petitioner and Willis ran back from the victim's trailer (app. 315). Around the same time, Gossett's father was pulling up to the petitioner's trailer (*id.*). The petitioner returned to his trailer with a gas can (app. 315, 319).

Shannon Powell testified that she and her boyfriend went to the petitioner's trailer the day after the fire (app. 396). At some point, the petitioner pulled Powell aside and told her that he was the one who set the fire (app. 398). Powell stated that the petitioner claimed that the victim and Gossett were messing around (app. 399). The

3

petitioner told her that he beat up the victim (app. 399).  The petitioner poured gasoline on the victim, put a PVC pipe in the victim's mouth, poured gasoline into the pipe, and lit a match[3] (app. 399).

The petitioner took the stand at trial.  He testified that he did not beat the victim or set him on fire (app. 484–85).  The petitioner testified that he saw the victim that day as he and Gossett left Hazel's trailer to go to Gossett's father's house (app. 486).  He further testified that he fell asleep at Gossett's father's house watching a movie and that sounds of fire trucks woke him up (app. 487).

**Direct Appeal**

The petitioner filed his notice of appeal on or about December 13, 2007 (doc. 28-5).  On appeal, the petitioner was represented by Robert M. Dudek, Deputy Chief Appellate Defender for Capital Appeals with the South Carolina Commission on Indigent Defense, Division of Appellate Defense (doc. 28-6).  In the final brief, the petitioner argued the court erred

> . . . by refusing to instruct the jury on assault and battery of high and aggravated nature as a verdict option since there was evidence appellant was involved in beating the decedent with Jesse Willis, badly injuring him, but where the evidence was highly disputed about who set the subsequent fire that undisputedly killed the decedent[.]

(Doc. 28-6 at 4).  On July 8, 2009, the State filed a final brief (doc. 28-7).

In an unpublished opinion filed July 14, 2010, the South Carolina Court of Appeals affirmed the petitioner's convictions pursuant to Rule 220(b)(1), SCACR (doc. 28-8).

---

[3]  In her statement to police, Powell stated the petitioner threw a cigarette, not a match (app. 414).  She also stated that the petitioner indicated he used the PVC pipe to prevent the identification of the victim through dental records (app. 402).

4

### *PCR*

On August 4, 2010, the petitioner filed an application for post-conviction relief ("PCR") (2010-CP-11-591), asserting claims of ineffective assistance of trial counsel (app. 604–11). Specifically, the petitioner asserted Weatherford was ineffective for failing to investigate documentary evidence and witnesses in the petitioner's case and for failing to call the State's key witnesses, Willis and Rodriguez, for direct or cross-examination (app. 610). The State served its return on February 15, 2011 (app. 612–16).

An evidentiary hearing was held on February 3, 2012, before the Honorable Frank R. Addy, Circuit Court Judge (app. 617–749). The petitioner was present and was represented by Samuel R. Bass, II (app. 617, 647). The State was represented by Assistant Attorney General Suzanne H. White (app. 617). During the hearing, the petitioner and Weatherford testified. Willis was called to the stand and invoked his Fifth Amendment right against self-incrimination (app. 621–22). Three other witnesses also testified for the petitioner (app. 623–44, 695–706).

On May 17, 2012, the PCR court filed an prder of dismissal (app. 777–88). In the order, the PCR court noted it had the opportunity to review the record in its entirety and that it had heard the testimony and arguments presented at the PCR hearing (app. 778). The PCR court applied the standard for proving ineffective assistance of counsel and found that the petitioner had not met his burden of proving his entitlement to post-conviction relief (app. 785–87). The PCR court found Weatherford's testimony to be more credible than the testimony of the petitioner or his witnesses, and that Weatherford was not ineffective in his investigation of the evidence nor for failing to ensure the petitioner had reviewed the physical evidence prior to trial (app. 785–86). The PCR court found that, even if counsel had ensured the petitioner had reviewed the physical evidence, the outcome of the trial would not have changed (app. 785).

The PCR court also found that counsel was not ineffective regarding the petitioner's allegation that counsel did not properly investigate or call potential defense witnesses (*id.*). Weatherford articulated a valid reason and trial strategy for not calling

5

Willis as a witness (app. 785–86).  The PCR court also found trial counsel's failure to offer supposed evidence of third-party guilt was reasonable (app. 786).  The PCR court noted that the petitioner had also alleged that counsel was ineffective for failing to call Rodriguez as a witness at trial; however, the petitioner did not offer any testimony or evidence in support of this allegation (*id.*).

Ultimately, the PCR court found that Weatherford adequately conferred with the petitioner, conducted a proper investigation, and represented the petitioner competently, and that his conduct did not fall below the objective standard of reasonableness (app. 786–87).  Accordingly, the PCR Court ruled that the petitioner failed to prove the first prong of the test for ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  The PCR court also found the petitioner had failed to prove the second prong of *Strickland*—that he was prejudiced by counsel's performance—and the PCR court denied and dismissed the PCR application with prejudice (app. 787).

### PCR Appeal

The petitioner filed a notice of appeal on May 22, 2012 (doc. 28-10).  On appeal, the petitioner was represented by Susan B. Hackett, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense (doc. 28-11).  In his petition for writ of certiorari, the petitioner contended trial counsel's failure to investigate and present favorable evidence to support his defense at trial violated the petitioner's state and federal constitutional rights to effective assistance of counsel (*id.*).  The State filed a return, dated September 3, 2013 (doc. 28-12).  On August 6, 2014, the Supreme Court of South Carolina denied the petition for writ of certiorari (doc. 28-13).  The remittitur was issued on August 22, 2014 (doc. 28-14))

6

## FEDERAL PETITION

On June 16, 2015, the petitioner filed his § 2254 petition proceeding *pro se* (doc. 1).  On October 23, 2015, the respondent filed a motion for summary judgment (doc. 28).  On November 4, 2015, the petitioner, represented by counsel, filed an amended petition and a memorandum in support of the amended petition (doc. 33).  The petitioner filed a response in opposition to the motion for summary judgment on December 18, 2015, which incorporated by reference the memorandum in support of the amended petition, and he filed a supplement on June 8, 2016 (docs. 39, 41).

In his federal petition, the petitioner makes the following claims, quoted substantially verbatim:

> **Ground One**:  Mr. Phillips was denied the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when trial counsel failed to Investigate Witnesses.
>
> **Supporting Facts**: Mr. Phillips (petitioner) was arrested on September the 6th, 2006. His co-defendant, Jesse Willis, was found hiding in a neighbor's camper on Sept. 7th, 2006, and was arrested. During interrogation, Mr. Willis blamed Mr. Phillips for setting a fire that caused Juan Roman's (victim) death. Two days later (Sept. 9th), [Mr. Willis admitted his guilt and wrote a second statement claiming sole responsibility for the arson that resulted in the death.]
>
> Petitioner's trial counsel, the late Mr. Chip Weatherford, was hired by Mr. Phillips on Sept. 25th, 2006. The trial took place 15 months after Mr. Weatherford was hired as counsel. During the 15 months leading to trial, Mr. Phillips repeatedly asked Mr. Weatherford to investigate Mr. Willis, his confession, the other co-defendant, and the additional witnesses that Willis had also confessed to. Mr. Weatherford never investigated any of the above listed witnesses. At trial Mr. Weatherford asked the judge for a continuance, and pointed out that he had never attempted to investigate these witnesses.
>
> During the 15 months leading to trial, both Mr. Phillips and Mr. Willis were detained in separate dormitories within the county jail. Mr. Willis often boasted to others who were in jail with him that [he killed the victim by setting the fire alone].

Ten (10) people that Mr. Willis told that he did kill the victim wrote statements to the effect. Mr. Weatherford conducted NO investigation of these favorable witnesses, or of Mr. Willis, who had confessed. Mr. Weatherford also never gathered or investigated the exculpatory evidence that was available.

At Mr. Phillips' Post Conviction Relief hearing, Mr. Willis was subpoenaed by Mr. Phillips (petitioner) along with three (3) other people that Mr. Willis had admitted his guilt to. [Before the PCR hearing began, the PCR judge expressed concern for "what the witness (Willis) might say", so the judge appointed the opposing Attorney General's client, Mr. Doug Brannon (who was present for the next scheduled case), to represent the petitioner's witness, Mr. Willis. Mr. Brannon quickly had Mr. Willis removed from the courtroom without testifying, citing Willis' Fifth Amendment rights.].

The three (3) additional witnesses present at PCR were allowed to testify. Witnesses Smith, Hull, and Adams all three (3) testified and their statements against Willis were entered as PCR exhibits. The three (3) witnesses' testimonies revealed: 1) Willis claimed sole responsibility to the crime, with no remorse, (2) Willis gave specific details as early as two (2) days after his arrest that would not be determined and released by SLED for over 9 months, and (3) Mr. Weatherford NEVER attempted to contact these witnesses at all.

Prior to the trial, the late Mr. Weatherford told the trial judge that he had not investigated these key witnesses, and that he was not prepared to present a defense. Had Mr. Weatherford investigated, there is a reasonable probability that the outcome of the trial would have been different.

**Ground Two**: Mr. Phillips was denied the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when trial counsel failed to Call Witnesses.

**Supporting Facts**: Stemming from Ground One above (no investigation), the trial counsel never called the key witnesses to the stand. At trial, Mr. Weatherford only called one witness, and that witness had absolutely NO knowledge of the case. Three (3) of the four (4) witnesses called at PCR offered vital testimony that exculpated Mr. Phillips (petitioner). The fourth PCR witness, Mr. Willis (co-defendant), invoked his Fifth Amendment Right at PCR, and was Not Called to testify at trial. If Willis would have been called at trial, either he 1) would have testified and been questioned about his verbal and written

8

confessions in front of the jury, or 2) would have invoked the Fifth Amendment and been deemed "unavailable" by rule of court, which would have in turn caused his written confession to become admissible along with the testimony of the many people he had boasted to.

Had Mr. Willis, or the other critical witnesses, been called, the jury would have had overwhelming reasonable doubt before them. Mr. Weatherford should have called these key witnesses, and there is a reasonable probability of a different outcome if the jury would have heard this exculpatory testimony that was available.

**Ground Three**: Mr. Phillips was denied the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when trial counsel failed to Investigate Defense and did not understand Applicable Laws and Facts of Case.

**Supporting Facts**: Trial Counsel had available to him, had he conducted an investigation, a legal defense. Two (2) days after co-defendant Willis' arrest, Willis wrote a confession claiming sole responsibility to the crimes. Willis boasted to a number of different people that he violently set fire to the victim, and that this resulted in the victim's death. Multiple statements began to flow from witnesses that Willis had confessed to and boasted to. Three (3) of the statements and testimonies were presented at PCR hearing, along with a transcript from a bond hearing, where the trial counsel had told the judge he could bring in a dozen witnesses that co-defendant Willis had confessed to.

A Third-Party-Defense was definitely the appropriate legal defense, and the only correct approach to the trial, because proving Willis was responsible for the arson and murder would have made it clear to the jury that Mr. Phillips (petitioner) was NOT THE GUILTY PARTY. Yet, the exculpatory evidence never made it before the jury because Mr. Weatherford was not familiar with the applicable rules and laws set forth concerning 3rd party guilt, due to his lack of preparation. Had trial counsel investigated this defense and actually understood the proper laws and facts of the case he would have concluded that the 3rd party defense offered the true facts of the case. Thus, showing the jury the reasonable doubt necessary. There is more than a reasonable probability of a different outcome absent of the counsel's failures.

**Ground Four**: Mr. Phillips was denied the right to effective assistance of counsel under the Sixth Amendment to the

United States Constitution when trial counsel failed to Ensure that Mr. Phillips Saw the Physical Evidence Before the Trial In Order For A Defense To Be Prepared.

**Supporting Facts**: Trial counsel never ensured that Mr. Phillips viewed the evidence that would be used against him at trial. There was only on[e] piece of physical evidence that was produced at trial. The evidence was a #24 Jeff Gordon towel that had two spots of the victim's blood on it. The towel belonged to the co-defendant Willis' mother. This towel came from the Willis' home. The co-defendant's mother kept the towel hanging in the living room of her mobile home as a curtain. Both Willis and his mother, Hazel Willis, lived in the mobile home. The co-defendant's Mother (Hazel) did testify at trial, but [she was never questioned about her towel.] Hazel's testimony was given on the Wednesday of trial, but the towel was not revealed until the Thursday of trial. Ms. Willis was never asked about this towel from her and her son's (co-defendant's) home.

Because [Mr. Phillips did not view the evidence before trial] the trial counsel did not ask Ms. Willis about the towel her son had, no one knew that the towel in a Sealed Evidence Bag was the #24 Jeff Gordon towel from the co-defendants living room until the day after Ms. Willis had already testified and left the courthouse. The co-defendant Willis was never called at trial.

At PCR hearing, a letter was presented showing that a few days before the trial, Mr. Weatherford asked the solicitor to arrange for [Mr. Phillips (petitioner) "to see the evidence that would be used against him, in order to prepare a defense".] Trial counsel shows he only made this request a few days before trial and states, "we didn't get there. We got to trial first."

The trial counsel or petitioner had No Knowledge that the only piece of evidence was a #24 Jeff Gordon beach towel until a day after the owner (co-defendants mother) had already testified. Had trial counsel ensured that Mr. Phillips (petitioner) seen this evidence before trial Ms. Willis would have established ownership of the evidence and that her son (the co-defendant) possessed the towel. Thus resulting that the solicitor would not have been able to imply to the jury that the petitioner must be guilty because the towel was found in his clothes basket.

Had trial counsel not been ineffective in his duty's the petitioner would have seen what the evidence was before trial and in

10

defense Ms. Willis would have clarified that the towel that came from her son was the towel in question.

There is definitely a reasonable probability of a different outcome had trial counsel not failed to ensure that Mr. Phillips was given the right to see the evidence that would be used against him in order to prepare a defense.

**Ground Five**: Mr. Phillips was denied the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution due to the Cumulative Effect of trial counsel's failures.

**Supporting Facts**: As described in Ground One, Two, Three, and Four above, trial counsel never investigated witnesses, never called witnesses with exculpatory documents and testimony, never offered the legal defense, nor did he understand the appropriate laws or facts of the case, and never ensured that Mr. Phillips viewed the evidence that would be used against him in order to prepare a defense. In this and all other grounds asserting ineffective assistance of counsel, Mr. Phillips contends that even if any one of these individual Grounds are not sufficiently prejudicial to require reversal, the cumulative instances in Grounds 1–4 of ineffective assistance of counsel clearly create the reasonable probability of a different outcome.

(Doc. 1) (some alterations in original) (footnote omitted).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

11

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Exhaustion and Abandonment

The respondent acknowledges that the grounds raised in the petition are exhausted (doc. 28 at 24–26).

With respect to Ground Five, the petitioner explicitly abandons this claim in the memorandum in support of the amended petition (doc. 33-1 at 27, n. 5). Accordingly, the court will not address this ground.

### Procedural Bar

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue

12

in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'"  *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.  However, "actual innocence" requires "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The respondent argues that Grounds Three and Four are procedurally barred (doc. 28 at 26–29). The petitioner does not argue that cause and prejudice should excuse the procedural bar but instead asserts that these grounds were raised to and ruled upon by the PCR court and the Supreme Court of South Carolina (doc. 39 at 4–6).

### Ground Three

In Ground Three, the petitioner contends that Weatherford was ineffective for failing to investigate and understand the applicable law (doc. 1 at 12). In his response in opposition to the motion for summary judgment, the petitioner argues that this ground is intertwined with Grounds One and Two because Weatherford's misunderstanding of law contributed to his failure to investigate or call the relevant witnesses; thus, Ground Three was not procedurally defaulted (doc. 39 at 4). Liberally construing the petition, the court agrees that this issue was raised to and ruled upon by the PCR court and the Supreme Court of South Carolina Court (*see* app. 777–88; docs. 28-10, 28-11). Accordingly, the court will address the merits of this ground.

### Ground Four

In Ground Four, the petitioner argues that Weatherford was ineffective for failing to review the physical evidence with the petitioner prior to trial (doc. 1 at 14–15). This ground was raised to and ruled on by the PCR court (app. 785). However, even liberally construing the petition, it is clear that this ground was not fairly presented to the Supreme Court of South Carolina. In the petition for writ of certiorari, the sole issue presented is whether "[t]rial counsel's failure to investigate and present favorable evidence to support Petitioner's defense at trial violated Petitioner's state and federal constitutional rights to the effective assistance of counsel" (doc. 28-11 at 3). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so; however, a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the petitioner's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up

14

questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  Because Ground Four was not fairly presented to the Supreme Court of South Carolina, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).  As noted above, the petitioner does not argue that cause and prejudice should excuse the procedural bar, and accordingly, this ground is procedurally barred (*see* doc. 39 at 4–6).

Moreover, even if the court determined that Ground Four was not procedurally barred, this claim would still fail on the merits.  As explained in more detail below, with respect to ineffective assistance of counsel claims, this court must decide whether the PCR court reasonably determined trial counsel provided effective assistance under the standard articulated in *Strickland*.  This review is "doubly" deferential.  *Harringon v. Richter*, 562 U.S. 86, 104 (2011).  In Ground Four, the petitioner argues that if he had been allowed to view the physical evidence, he would have known that the towel with the victim's blood on it belonged to Hazel, his co-defendant's mother, and the solicitor would not have been able to imply that the petitioner was guilty because the towel was found in his clothes basket (doc. 1 at 14–15).

The PCR court addressed Weatherford's performance under the standard set forth in *Strickland* (app. 779).  The PCR court found:

> The Applicant alleged that Counsel was ineffective for failing to investigate the evidence and witnesses in the case.  This Court finds that Counsel was not ineffective for investigating the evidence in the case or for failing to ensure the Applicant had the opportunity to review the physical evidence obtained from the scene prior to trial.  Counsel testified that he reviewed photos of the scene with the Applicant and discussed the items that the police removed from the home with Applicant. Specifically, as it relates to the racing towel, this Court finds Counsel's testimony credible that during trial, the Applicant did not indicate to Counsel that the towel was actually a towel from Hazel Willis' house.  In fact, as the record reflects, the

> Applicant did not offer that as an explanation while he was testifying. This Court finds that even if Counsel had ensured the Applicant had the opportunity to review the physical evidence, the outcome of the trial would not have changed.

(App. 785). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that Weatherford's representation fell below an objectively reasonable standard or any resulting prejudice (app. 787).

Further, the record supports the PCR court's determination. At the PCR hearing, Weatherford agreed that there was no real physical evidence except for a blood-stained racing towel (app. 737). Weatherford testified that he did show the petitioner pictures of evidence and the scene, but the racing towel was not shown to him (app. 728–29). However, Weatherford noted that at trial, the petitioner did not tell him he believed the towel was Hazel's or testify to that effect even though the petitioner had seen the towel by the time he testified (app. 729, 421–43 (introduction of the towel into evidence), 453–521 (testimony of the petitioner at trial)). Weatherford further testified that he believed it would not have made any difference or changed the outcome of the case if the petitioner had been able to see the towel before trial because the towel had the victim's blood on it and it was found in the petitioner's trailer (app. 729–30, 734). Thus, the PCR court's decision

16

was not contrary to or an unreasonable application of Supreme Court precedent, and the

petitioner is not entitled to relief on this ground.

***Merits Review***

> The Fourth Circuit Court of Appeals has stated as follows regarding the

standard of review in cases, like the instant case, that are governed by the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA"):

> > For a claim that was adjudicated on the merits in state court
> > proceedings, this Court will not issue a writ of habeas corpus
> > under the AEDPA unless (a) the state court decision is in
> > "square conflict" with Supreme Court precedent that is
> > controlling as to law and fact or (b) if no such controlling
> > decision exists, "the state court's resolution of a question of
> > pure law rests upon an objectively unreasonable derivation of
> > legal principles from the relevant [S]upreme [C]ourt precedents,
> > or if its decision rests upon an objectively unreasonable
> > application of established principles to new facts." *Green v.
> > French*, 143 F.3d 865, 870 (4th Cir. 1998). "In other words,
> > habeas relief is authorized only when the state courts have
> > decided the question by interpreting or applying the relevant
> > precedent in a manner that reasonable jurists would all agree
> > is unreasonable." *Id.* When a petitioner has properly presented
> > a claim to the state court but the state court has not adjudicated
> > the claim on the merits, however, our review of questions of law
> > and mixed questions of law and fact is *de novo*. *See Jones v.
> > Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying
> > pre-AEDPA *de novo* standard of review to claims of ineffective
> > assistance of counsel that were properly raised, but not
> > adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

*Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984).  However, the review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### Grounds One and Two

In Grounds One and Two, the petitioner asserts Weatherford was ineffective in failing to investigate and call witnesses (doc. 1 at 6–7, 9).  Specifically, the petitioner

asserts Weatherford should have called Willis and three other witnesses who had contact

with Willis while he was in the Cherokee County Detention Center.

Here, the PCR court addressed Weatherford's performance under the

standard set forth in *Strickland* (app. 779). The PCR court found:

> As it relates to the Applicant's allegations that Counsel was
> ineffective for failing to properly investigate or call potential
> defense witnesses, this Court finds that Counsel was not
> ineffective. Trial counsel, possessing experience in trying a
> dozen homicides over his career, articulated a valid reason and
> a valid trial strategy for not-calling co-defendant Willis as a
> witness. *See generally* Jackson v. State, 329 S.C. 345, 495
> S.E.2d 768 (1998); Edwards v. State, 392 S.C. 449, 710 S.E.2d
> 60 (2011). Calling co-defendant Willis would have been fraught
> with risks, not the least of which would have been testimony
> consistent with an earlier statement implicating Applicant.
> Calling the other witnesses who had supposedly overheard
> Willis admitting to the homicide would have required Willis
> being called first and Willis asserting his 5th amendment rights
> on order to render him unavailable. Again, such a prerequisite
> was inherently risky, and Counsel was not deficient for failing
> to call Willis as a witness. Similarly, Trial Counsel's failure to
> offer supposed evidence of third-party guilt (*see* Holmes v.
> South Carolina, 547 U.S. 319, 126 S.Ct. 1727 (2006)), was
> reasonable for the reasons explained above. Additionally, this
> Court did not find the testimony of any of the three additional
> witnesses to be credible, which further supports this Court's
> opinion that Counsel utilized a proper trial strategy in not calling
> these many witnesses from the Detention Center in an attempt
> to cast blame fully upon Jesse Willis. The Applicant raised the
> issue that Counsel was ineffective for failing to call Alberto
> Rodriguez as a witness in his application, but failed to offer any
> testimony or evidence in support of this allegation.

(App. 785–86). The PCR court's denial of the petitioner's ineffective assistance claim was

neither contrary to nor an unreasonable application of applicable Supreme Court precedent.

First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court

precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts

that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that Weatherford's representation fell below an objectively reasonable standard or any resulting prejudice (app. 787).

The record supports the PCR court's determination. During the petitioner's PCR hearing, Willis was called to the stand; his attorney spoke on his behalf and informed the PCR court that Willis invoked his Fifth Amendment right against self-incrimination (app. 621–22). The petitioner's witnesses from the Cherokee County Detention Center were also called. Joseph Smith testified regarding a note that he had written at the petitioner's request, concerning a conversation Smith had with Willis at the Detention Center (app. 624, 627, 632). The note indicated that Willis had told Smith he had killed the victim alone (app. 627). Smith testified that he was not contacted by the petitioner's counsel to testify about the conversation with Willis (app. 627–29, 750). Carmie Joe Hull testified about a note he had written for the petitioner regarding a conversation between Willis and his mother that Hull had overheard in the visitation room at the Detention Center (app. 635–37). Hull told the petitioner that he would help him with a sworn statement or testimony after his own plea (app. 636). Donald Wayne Adams testified about a note that he did not remember writing but that bore his signature (app. 696–97, 769). He testified that Willis told him he killed a man (app. 703). The petitioner testified, and the record reflected, that Weatherford was aware of Smith and Hull as potential witnesses (app. 658–60).

Weatherford confirmed that he was aware of conflicting statements from Willis. He ultimately decided not to authenticate Willis's alleged confession or contact the potential witnesses as he determined it would be risky and unavailing in light of the witness

20

testimony against the petitioner at trial (app. 709–12, 731, 736–740, 745). Weatherford stated that he had no way of knowing what Willis might say; Weatherford implied that Willis may have implicated the petitioner in the crimes rather than exonerate him (app. 730). Weatherford stated that he did not take any steps to authenticate Willis's confession or contact any of the potential witnesses from the Detention Center because he decided it would not be fruitful (app. 711–12). Weatherford further testified that he called and spoke with other witnesses, visited the jail numerous times to meet with the petitioner, and that he was completely prepared for trial (app. 727, 741–42). The PCR court found "[Weatherford's] testimony to be more credible than the testimony of the [petitioner] or any of the additional witnesses" (app. 785). The PCR court's determination with respect to credibility is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." (citing 28 U.S.C. § 2254(e)(1))).

The petitioner argues that the PCR court erred in making its credibility findings (doc. 39 at 7–9). The petitioner contends that Weatherford's statements at the PCR hearing and his actions at trial were contradictory; for example, the petitioner argues that Weatherford's statement that he did not believe third-party guilt was applicable to the petitioner's case was contradicted by his argument at trial that third-party guilt was admissible (doc. 39 at 7–8). However, the petitioner "has not clearly shown that the credibility determination in the PCR court's order is *without support*." *Reilly v. Cartledge*, C.A. No. 0:12-3503-SB, 2014 WL 1154509, at *14 (D.S.C. Mar. 21, 2014) (emphasis added); *see Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be especially

deferential to the state PCR court's findings on witness credibility") (internal quotation marks and citations omitted).

With respect to his argument that Weatherford was ineffective because he had a mistaken understanding of the hearsay rules, the petitioner asserts that Willis should have been called to testify at trial because had he invoked his Fifth Amendment rights, he would have been unavailable to testify, and the other three witnesses' statements regarding Willis's statements to them would have been admissible as an exception to the rule against hearsay.  Alternatively, Willis may have agreed to testify and implicated himself (doc. 33-1 at 17–19).  Both parties point out that Willis must have refused to testify to allow the other three witnesses' statements at trial (docs. 28 at 38; 33-1 at 17–18).  However, as previously discussed, Weatherford indicated at the PCR hearing that Willis may not have exonerated the petitioner if he had testified and stated that Willis had given inconsistent statements in the past.

Thus, the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.  *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys

22

would not defend a particular client in the same way." (internal citation omitted)).

Accordingly, the petitioner is not entitled to habeas corpus relief on this ground.

### Ground Three

In his third ground for relief, the petitioner alleges that Weatherford was ineffective because he failed to investigate a third-party defense and that he did not understand the applicable laws and facts of the case (doc. 1 at 12). Specifically, the petitioner contends that Weatherford should have argued that Willis was the guilty party.

As previously discussed, Ground Three was ruled upon by the PCR court as a part of its determinations with respect to Grounds One and Two. The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent (app. 779). Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that Weatherford's representation fell below an objectively reasonable standard or any resulting prejudice (app. 787).

The record supports the PCR court's determination. At the PCR hearing, Weatherford testified that he researched case law regarding third-party guilt and determined that the evidence he had may have created a mere suspicion and nothing more (app. 740). Weatherford noted that his understanding of the law was that "if an admission merely casts suspicion or raises conjecture about the guilt of another, it's not admissible. It's got to be more than that" (*id*). The PCR court referenced the correct standard for third-

23

party guilt under *Holmes v. South Carolina*, 547 U.S. 319 (2006), and determined that trial counsel's representation was not ineffective (app. 786).  Moreover, as previously discussed, the PCR court found that Weatherford's testimony was more credible than the petitioner's and the other witnesses' testimony; therefore, his decision not to call them in an attempt to cast blame on Willis was a proper trial strategy (app. 785).

Thus, the petitioner cannot show a state court either made an unreasonable determination of the facts or unreasonably applied Supreme Court precedent in denying relief upon this claim.  Since the petitioner fails to establish he is entitled to federal habeas relief upon this claim of ineffective assistance of counsel under 28 U.S.C. § 2254(d), he is not entitled to relief.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the court recommends that the respondent's motion for summary judgment be GRANTED and the petition be DENIED.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 11, 2016
Greenville, South Carolina

24